FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 AUG 28 P 2: 33

CLERK _____
S.__ __IST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

JOHNNY OVERSTREET, JR.,                )
                                       )
          Petitioner,                  )
                                       )
          v.                           )          CV 112-086
                                       )
WILLIAM DANFORTH, Warden,              )
                                       )
          Respondent.                  )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate incarcerated at Telfair State Prison, in Helena, Georgia, brought the above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

## I.      BACKGROUND

This case challenges Petitioner's convictions for a litany of offenses in the Superior Court of Richmond County, Georgia. On August 29, 2006, a Richmond County grand jury indicted Petitioner for three counts of burglary, four counts of kidnapping, seven counts of armed robbery, twelve counts of possession of a firearm during the commission of a crime, six counts of aggravated assault, and three counts of possession of a knife during the commission of a crime. (Doc. no. 20-1, pp. 30-48.) The Georgia Court of Appeals provided

the following description of the facts underlying the offenses based on the evidence offered

against Petitioner at trial:

> [B]etween March 10 and April 14, 2006, armed robberies occurred at a Church's Chicken, Waffle King, Burger King, and two separate Wendy's restaurants in Richmond County. The robberies all took place around midnight and were perpetrated by two masked men (except for the Waffle King robbery, which was perpetrated by three masked men) who were described by many of the witnesses as wearing gloves and wielding either firearms or a knife, ordering them to either lie on the floor or to move to different locations within the store, and taking money from safes and cash registers.

Overstreet v. State, 696 S.E.2d 114, 116 (Ga. Ct. App. 2010).

Petitioner was appointed an attorney, Benjamin A. Jackson, from the public

defender's office of the Augusta Judicial Circuit. (Doc. no. 20-11, pp. 53-54.) Mr. Jackson

was a graduate of the Stanford University Law School who had been practicing law since

1985 and had tried forty-four felonies as an assistant district attorney in his first three years

and one or two cases per year thereafter as a criminal defense attorney before joining the

public defender's office in 2005. (Id. at 70-71.) Mr. Jackson described Petitioner's jury trial

in the Superior Court of Richmond County as "probably the most difficult case [he] ever

tried . . . [i]n terms of feeling that the odds were overwhelming against [his] client," (id. at

78).

The state appellate court provided the following summary of the evidence against

Petitioner:

> The incident at Burger King, which occurred on April 14, 2006, was recorded on a surveillance videotape. That tape showed Timothy Wright, who was one of the employees present during the robbery, open the back door of the restaurant immediately before the masked men used that door to enter. . . .

. . . Wright told police that he (i) allowed Kenneth Walker and [Petitioner] to use his car to drive to the Burger King to commit the robbery, (ii) used Walker's cell phone to stay in contact with Walker and [Petitioner] and let them know when they should arrive, and (iii) opened the rear door of the restaurant when he knew Walker and [Petitioner] were ready to enter.

[Petitioner] was arrested for his involvement in the Burger King robbery and provided a statement confirming the description of the robbery given by Wright. [Petitioner] also admitted to his involvement in robbing the Church's Chicken, the Waffle King, and one of the Wendy's restaurants. . . .

. . .

. . . Derrick Garrett testified that [Petitioner] enlisted his assistance in robbing the other Wendy's restaurant. . . .

Id. at 116-17.

The jury found Petitioner guilty of all thirty-five of the above-enumerated offenses on August 27, 2007. (Doc. no. 20-1, pp. 134-137.) After the trial, on September 21, 2007, Petitioner was sentenced as follows: a term of life imprisonment for each count of armed robbery, all to run concurrent; fifteen years on each count of kidnapping, burglary, and aggravated assault, all to run concurrent with each other and the armed robbery sentences; and five years for each count of possession of a firearm during the commission of a crime and possession of a knife during the commission of a crime, all to run concurrent with each other and the counts for which he received fifteen-year sentences, but consecutive to the counts for which he received life sentences. (Doc. no. 20-2, p. 4.)

After his conviction, Petitioner was appointed new counsel, John R. Taylor, who was admitted to the Georgia Bar in 2001, had three years of experience as a prosecutor in the Judge Advocate General's Corps, two years of experience in the death penalty section of the Attorney General's Office, and more than two years of experience as a private practitioner

in criminal and civil law. (Doc. no. 20-1, pp. 10-11.)  Mr. Taylor filed Petitioner's motion

for new trial and represented him at the hearing on the motion.  (See doc. no. 20-11, pp. 31-

90.)

Mr. Taylor then represented Petitioner on direct appeal, where he raised the following

enumerations of error:

(1)     the trial court erred in refusing to grant his motion to suppress on the
        basis of lack of probable cause to arrest and interrogate him;

(2)     the trial court erred in refusing to grant his motion for new trial on the
        basis of the following instances of ineffective assistance of trial
        counsel:

        (a)     failure to adequately meet with Petitioner and prepare for
                trial;

        (b)     failure to properly call alibi witnesses;

        (c)     failure to investigate State witnesses; and

        (d)     failure to object to State's closing argument;

(3)     the trial court erred in refusing to grant his motion for new trial based
        on the erroneous admission of alleged similar transactions evidence;

(4)     the trial court erred in refusing to grant his motion for new trial based
        on the trial court's improper questioning of him;

(5)     the trial court erred in refusing to voir dire the jury on the influence
        of disparaging comments made in the presence of jurors; and

(6)     the trial court erred in refusing to grant his motion for new trial based
        on the fact that the verdict was strongly against the weight of the
        evidence.

(Doc. no. 20-3, pp. 21-22, 28-37.)  On June 1, 2010, the Court of Appeals of Georgia rejected

Petitioner's contentions and affirmed his convictions. See Overstreet, 696 S.E.2d at 116-20.

4

Petitioner filed a state habeas corpus petition *pro se* in the Superior Court of Telfair County on July 23, 2010. (Doc. no. 17-2.) Petitioner amended the petition twice, however, including asking the state habeas court to disregard the grounds in his first petition, such that his claims were ultimately as follows:

(1)     appellate counsel rendered ineffective assistance by failing to raise the issue that co-defendant Wright testified that police forced him to implicate Petitioner in his statement;

(2)     the trial court erred by allowing Petitioner's confession into evidence when probable cause to issue an arrest warrant was absent;

(3)     trial counsel rendered ineffective assistance by failing to subpoena co-defendant Wright for the Jackson v. Denno[1] hearing;

(4)     appellate counsel rendered ineffective assistance by failing to attack the kidnapping convictions when the evidence was insufficient to support them because the asportation element was not present;

(5)     appellate counsel rendered ineffective assistance by failing to raise the claim that the convictions for the burglary offense should be vacated since the burglaries were part and parcel of the armed robberies;

(6)     the trial court erred in giving the jury a charge on party to a crime;

(7)     the trial court erred in denying a mistrial after the State read the law to the jury in its closing argument;

(8)     the trial court erred in continuing with the trial outside the presence of Petitioner;

(9)     trial counsel rendered ineffective assistance by failing to timely object to the State's attack on Petitioner's character;

(10)    the State committed prosecutorial misconduct by attacking Petitioner's character;

---

[1]378 U.S. 368 (1964).

(11) the trial court erred by allowing the State to attack Petitioner's character without admonishing the jury to disregard the comments or declaring a mistrial;

(12) the trial court erred by allowing a copy, rather than the original indictment, to go into the jury room over trial counsel's objection; and

(13) the jury pool or array was not racially or ethnically in proportion to the demographics of the 2000 census.

(Doc. nos. 17-3, 17-4.)

After the state habeas court held an evidentiary hearing on January 25, 2011, (doc. no. 20-1, pp. 4-22), Petitioner's state habeas corpus petition was denied in its entirety on August 22, 2011, (doc. no. 17-6). The Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal on April 24, 2012. (Doc. no. 17-8.)

Petitioner then timely filed the above-captioned § 2254 petition, in which he raises fifteen grounds for relief. (Doc. no. 4.) Grounds Two through Thirteen are identical to those same-numbered grounds in Petitioner's state habeas corpus petition. (See id. at 7, 10-12.) In Ground One of his federal petition, Petitioner contends that appellate counsel rendered ineffective assistance by failing to raise "all of the viable claims herein listed." (Id. at 7.) In Grounds Fourteen and Fifteen, Petitioner contends that trial counsel rendered ineffective assistance by failing to conduct an adequate pretrial investigation and failing to present an alibi defense or alibi witnesses. (Id. at 12.)

## II.    STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure

of federal habeas jurisdiction, designed to confirm that state courts are the principal forum

for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S.

Ct. 770, 787 (2011).  Accordingly, § 2254(d) creates a "difficult to meet and highly

deferential standard for evaluating state-court rulings, which demands that state-court

decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398

(2011) (quoting Richter, 131 S. Ct. at 786; Woodford v. Visciotti, 537 U.S. 19, 24 (2002))

(internal citation omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the

difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1)

as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable

7

from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Richter, 131 S. Ct. at 786-87 ("[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398.

Moreover, AEDPA mandates a highly deferential standard of review for state court factual determinations. With regard to factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Wood v. Allen, 558 U.S. 290, 301 (2010) ("The term 'unreasonable' is no doubt difficult to define. It suffices to say, however, that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." (internal citation and punctuation omitted)). Additionally, § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and that the habeas petitioner has the burden of rebutting that presumption "by clear and convincing evidence." See also

8

<u>Reese v. Sec'y, Fla. Dep't of Corr.</u>, 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review.") (internal quotation marks omitted).

## III. DISCUSSION

### A. Petitioner's Claims in Grounds One, Three, and Six Through Thirteen Are Procedurally Defaulted, and Thus Fail to Provide a Basis for Federal Habeas Relief.

#### 1. A Federal Habeas Petitioner Defaults a Claim by Failing to Properly Exhaust State Remedies.

AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss unexhausted habeas claims that the petitioner did not raise in state court, but could have raised by any available procedure. 28 U.S.C. § 2254(b)(1)(A) & (c). A state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the state inmate's federal claims. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); <u>see also</u> <u>Henderson v. Campbell</u>, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)).

The exhaustion requirement applies with equal force to all constitutional claims, including claims of ineffective assistance of counsel. <u>See</u> <u>Lucas v. Sec'y, Dep't of Corr.</u>, 682 F.3d 1342, 1353-54 (11th Cir. 2012); <u>Footman v. Singletary</u>, 978 F.2d 1207, 1211 (11th Cir.

1992).  Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available.  McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005) ("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar.").

A federal habeas petitioner can run afoul of procedural default rules in one of two ways, depending on whether the claim at issue is an old one that the petitioner has already attempted to assert unsuccessfully in state court, or a new claim that the petitioner never attempted to raise in state court.  First, a federal habeas petitioner can improperly attempt to revive an old claim that a state court has previously denied on procedural grounds.  "As a general rule, a federal habeas court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are 'independent and adequate' to support the judgment."  Boyd v. Comm'r, Alabama Dep't of Corr., 697 F.3d 1320, 1335 (11th Cir. 2012), cert. denied, 133 S. Ct. 2857 (2013).  A state court decision rests upon "independent and adequate" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim.  Second, the state court decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law.  Finally, the state procedural rule must be adequate; i.e., it may not be applied in an arbitrary or unprecedented fashion.  The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for purposes of the procedural default doctrine.

Id. at 1336 (internal quotations and citations omitted).  Additionally, the Supreme Court has

made clear that "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default." Walker v. Martin, 131 S. Ct. 1120, 1125 (2011) (citing Beard v. Kindler, 558 U.S. 53, 60-61 (2009) (stating that a discretionary state procedural rule can serve as an adequate procedural bar to federal habeas review because such a rule is considered "firmly established")).

Second, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim in his federal petition that would be procedurally barred if he attempted to raise it in state court. In such instances, the petitioner's failure to bring the claim properly in state court has "matured into a procedural default." Smith v. Jones, 256 F.3d 1135, 1139 (11th Cir. 2001). Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998); see also Harris v. Reed, 489 U.S. 255, 263 n.9 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."). Simply put, if a claim has not been "fairly presented in the state courts, it is procedurally defaulted." Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006). To that end, Georgia law prohibits the assertion of state habeas claims in any successive petition that could have been asserted in the original state habeas petition. O.C.G.A. § 9-14-51; Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998) ("The Georgia statute restricting state habeas review of claims not presented in earlier

state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court . . . .").

> **2. Petitioner Failed to Present the Claims in Grounds Three and Six through Thirteen on Direct Appeal, and Those Claims Are Now Procedurally Defaulted.**

Under Georgia law, absent a showing of cause to excuse the default and actual prejudice, the failure to object at trial or to raise on direct appeal any error or deficiency alleged to have occurred during the underlying criminal proceedings creates a procedural bar to its consideration in a habeas corpus proceeding. See O.C.G.A. § 9-14-48(d); Black v. Hardin, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows: a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."); see also Waldrip v. Head, 620 S.E.2d 829, 835 (Ga. 2005) ("Claims not raised on direct appeal are barred by procedural default[.]"). Georgia law also requires that claims of ineffective assistance of trial counsel be raised at the "earliest practicable moment" by new counsel, or absent a showing of cause and prejudice, the claims are procedurally defaulted. White v. Kelso, 401 S.E.2d 733, 734 (Ga. 1991).

The claims in Grounds Three and Six through Thirteen of Petitioner's federal petition are identical to objections regarding the trial that Petitioner raised in his state habeas proceedings, *i.e.*, ineffective assistance of trial counsel, prosecutorial misconduct, trial court error, and the illegality of his jury pool. (See doc. nos. 17-3 & 17-4.) Relying on O.C.G.A. § 9-14-48(d), Black, and White, the state habeas court found that these claims were procedurally defaulted because Petitioner did not raise them on direct appeal and failed to

show cause and prejudice to overcome the procedural default. (See doc. no. 17-6, pp. 7-8, 11-12.) Respondent contends that this Court should defer to the state habeas court's findings on these issues. (Doc. no. 14-1, pp. 8-15.)

The procedural default rule relied upon by the state habeas court constitutes an independent and adequate state procedural ground in that it is an exclusively state doctrine and is regularly applied by Georgia state courts. See Hightower v. Schofield, 365 F.3d 1008, 1037 (11th Cir. 2004), *abrogated on other grounds by* Hightower v. Schofield, 545 U.S. 1124 (2005); Black, 336 S.E.2d at 755; Waldrip, 620 S.E.2d at 835; White, 401 S.E.2d at 734. Thus, this Court is barred from considering the claims unless Petitioner can establish sufficient reason for excusing the default.

A court can excuse a procedural default in two situations. First, "[a] petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default." Jones, 436 F.3d at 1304 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)). Under the first prong, "[c]ause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 132 S. Ct. 912, 922 (2012) (internal quotation marks omitted). "Once cause is proved, a petitioner also must prove prejudice. He must show 'not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

"Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice." Jones, 436 F.3d at 1304 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). The narrow fundamental miscarriage of justice exception encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime. Murray, 477 U.S. at 496.

Here, Petitioner claims in Ground One that appellate counsel rendered ineffective assistance for "failing to raise all of the viable claims herein listed," (doc. no. 4, p. 7), and ineffective assistance of counsel on direct appeal may provide cause to excuse a procedural default. See Martinez v. Ryan, 132 S. Ct. 1309, 1317 (2012) (citing Coleman v. Thompson, 501 U.S. 722, 754 (1991)). It is well-settled, however, that "the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Murray, 477 U.S. at 488-89; see Mize v. Hall, 532 F.3d 1184, 1192 n.5 (11th Cir. 2008); Henderson v. Campbell, 353 F.3d 880, 896-97 (11th Cir. 2003). As explained in greater detail infra, see Part III.A.3, the Court has determined that Petitioner's claims of ineffective assistance of appellate counsel in Ground One have been procedurally defaulted because they were not raised in his state habeas petition, and that he has failed to show any reason to excuse that default. Accordingly, those claims of ineffective assistance may not be used to establish cause to overcome the procedural default of Petitioner's claims in Grounds Three and Six through Thirteen. See Edwards v. Carpenter, 529 U.S. 446, 450-51 (2000) ("[A] procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse

the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself.").

Furthermore, Petitioner has failed to present any other explanation to demonstrate cause as to why his procedural default should be excused,[2] nor has he shown that this is an extraordinary case where a miscarriage of justice will occur if the Court does not consider these claims. Because the claims in Grounds Three and Six through Thirteen were found to be procedurally defaulted by the state habeas court and Petitioner has failed to show any reason to excuse the default, these claims are barred from review and do not provide a basis for granting federal habeas corpus relief.

### 3. Petitioner Failed to Exhaust Claims in Ground One, and They Are Now Procedurally Defaulted.

In Ground One, Petitioner claims that appellate counsel rendered ineffective assistance by "failing to raise all of the viable claims herein listed," (doc. no. 4, p. 7), or, in other words, by failing to raise, in the direct appeal, all of the other claims in his federal petition, Grounds Two through Fifteen. As Respondent observes, the claims in Grounds Fourteen and Fifteen were in fact raised on appeal, while the claims in Grounds Four and Five are themselves claims of ineffective assistance of appellate counsel, which were raised in Petitioner's state habeas petition and considered by the state habeas court. (Doc. no. 14-1, p. 1.) This leaves Petitioner's claims that appellate counsel was ineffective for failing to

---

[2]Because Petitioner has not demonstrated cause, the Court does not reach the issue of prejudice. See Johnson, 256 F.3d at 1171.

raise what are now the claims in Grounds Two, Three, and Six through Thirteen of Petitioner's federal petition. Respondent correctly contends that these claims of ineffective assistance of appellate counsel are procedurally defaulted. (Id. at 18-20.)

Aside from the claims in Grounds Four and Five of his federal petition,[3] the only specific instance of ineffective assistance of appellate counsel that Petitioner raised in his state habeas corpus petition was the failure to raise the issue that co-defendant Wright testified police forced him to implicate Petitioner in his statement. (Doc. no. 17-3, p. 7.) Thus, Petitioner failed to allege in his state habeas petition that appellate counsel was ineffective for failing to raise on appeal the claims that now make up Grounds Two, Three, and Six through Thirteen of his federal habeas petition. Because these claims were not raised in his state habeas petition, state remedies are no longer available to Petitioner on these claims. See O.C.G.A. § 9-14-51; Chambers, 150 F.3d at 1327.

Moreover, Petitioner has presented no justification – that is, nothing external to him that cannot be fairly attributed to him – for failing to properly raise these claims in state court, and therefore he has failed to demonstrate the cause necessary to overcome his procedural default of these claims. Neither has Petitioner contended, let alone shown, that a miscarriage of justice will occur if the Court does not consider these claims. Accordingly, the Court concludes that the claims of ineffective assistance of appellate counsel in Ground One have been defaulted and provide no basis for habeas relief.

---

[3]The Court addresses the merits of Grounds Four and Five infra. See Part III.C.3.

**B.     Petitioner's Claim in Ground Two that the Trial Court Erred in Admitting His Confession Is Precluded from Federal Habeas Review.**

In Ground Two, Petitioner contends that the trial court erred by allowing his confession given after his arrest into evidence when probable cause to issue an arrest warrant was absent. (Doc. no. 4, p. 7.) Respondent contends that the Georgia Court of Appeals considered this claim under the correct constitutional standard and decided it adversely to Petitioner, and that this Court should find the claim to be precluded from review under Stone v. Powell, 428 U.S. 465 (1976).

According to the Supreme Court in Stone, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim,[4] a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."[5] Id. at 494 (footnotes omitted). The Eleventh Circuit has held that the rule in Stone applies to a claim alleging an arrest lacked probable cause. See Peoples v. Campbell, 377 F.3d 1208, 1224-26 (11th Cir. 2004). Moreover, "[f]or a claim to be fully and fairly considered by the state courts, where

---

[4]As Respondent observes and as the Georgia Court of Appeals recognized, Petitioner's contention that his confession was inadmissible was based on the legality of his arrest and thus sounds in the Fourth Amendment. See Overstreet, 696 S.E.2d at 117 & n.8 (citing Taylor v. Alabama, 457 U.S. 687, 690 (1982) ("[A] confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is sufficiently an act of free will to purge the primary taint.") (citation and punctuation omitted)).

[5]In reaching this holding, the Supreme Court undertook a "weighing [of] the utility of the exclusionary rule against the costs of extending it to collateral review of Fourth Amendment claims." Stone, 428 U.S. at 489. The Court concluded that, on collateral review, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." Id. at 494-95.

there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court." Id. (quoting Tukes v. Dugger, 911 F.2d 508, 513-14 (11th Cir. 1990) (internal quotation marks omitted)).

Here, Petitioner filed a motion to suppress his statement with the trial court, which conducted an evidentiary hearing concerning whether the statement should be excluded based on the alleged illegality of his arrest. (See doc. no. 20-3, pp. 106-27; doc. no. 20-4, pp. 4-57.) The trial court concluded that "sufficient probable cause existed to arrest [Petitioner], and that no reason exists to suppress [Petitioner's] custodial statement taken subsequent to that arrest." (Doc. no. 20-1, p. 68.) Moreover, Petitioner argued on direct appeal that the trial court erred in refusing to grant his motion to suppress on the basis of lack of probable cause to arrest and interrogate him, and the Georgia Court of Appeals reviewed and affirmed the trial court's finding that law enforcement had probable cause to arrest Petitioner. See Overstreet, 696 S.E.2d at 117-18.

Accordingly, Petitioner's contention in Ground Two that his arrest was not supported by probable cause (and that his statement obtained as a result should have been inadmissible) was fully and fairly considered by the state courts and is now precluded from federal habeas review. See Stone, 428 U.S. at 494; Peoples, 377 F.3d at 1224-26.

**C.      Federal Habeas Relief Is Not Warranted with Respect to the Ineffective Assistance of Counsel Claims That Were Previously Rejected by the State Courts.**

In Grounds Four, Five, Fourteen, and Fifteen, Petitioner raises various claims of ineffective assistance of trial and appellate counsel. (Doc. no. 4, pp. 7, 10, 12.) Petitioner

asserted these same claims on either direct appeal or his state habeas petition, and the state courts denied them on the merits by applying the two-pronged test in Strickland[6] and determining that Petitioner failed to show either deficient performance or prejudice. See Overstreet, 696 S.E.2d at 119-20; doc. no. 17-6, pp. 8-11. As explained in detail below, there is no basis for federal habeas relief on those same claims, in light of the twin hurdles to relief imposed by § 2254 and Strickland.

1. **Petitioner Bears a Heavy Burden Under § 2254 and Strickland v. Washington for Showing Entitlement to Federal Habeas Relief Based on Ineffective Assistance of Counsel Claims Previously Rejected by the State Courts.**

A petitioner seeking relief under § 2254 based on a state court's adjudication of his ineffective assistance of counsel claims must clear two hurdles, i.e., the strict standard for proving ineffective assistance of counsel under Strickland and the substantial deference given to a state court's denial of an ineffective assistance of counsel claim pursuant to § 2254(d). Petitioner must show that counsel was constitutionally ineffective under the two prongs of Strickland by proving defense counsel's performance was deficient and prejudicial. Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden

---

[6]Strickland v. Washington, 466 U.S. 668 (1984)

of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as [trial] counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985); see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, the petitioner must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694) (internal citation omitted). As the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

The Strickland test also applies to claims of ineffective assistance of appellate counsel, see Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), with the additional consideration that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points," Jones v. Barnes, 463 U.S. 745, 751 (1983). It is up to appellate counsel to winnow out weaker arguments and select the most promising issues for review. Id. at 751-52. Indeed, the appellate "attorney need not advance every argument, regardless of merit, urged by the appellant . . . ." Evitts v. Lucey, 469 U.S. 387, 394 (1985).

That being the deferential standard for ineffective assistance of counsel claims applied by the state courts, Petitioner also bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for the Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell, 535 U.S. 685 at 699. Moreover, because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem review is doubly so." Richter, 131 S. Ct. at 788 (quotation marks and citations omitted). Put another way, "[t]he Strickland standard is a general one, so the range of reasonable applications is substantial." Id.

Applying these standards to the ineffective assistance of counsel claims that Petitioner unsuccessfully raised in the state courts and reasserts in his federal petition, Petitioner has not shown that federal habeas relief is warranted.

> **2. The State Court's Decision to Reject the Claims of Ineffective Assistance of Trial Counsel in Grounds Fourteen and Fifteen Is Entitled to Deference under AEDPA.**

In Grounds Fourteen and Fifteen, Petitioner contends that trial counsel rendered ineffective assistance by failing to conduct an adequate pretrial investigation and failing to present an alibi defense or alibi witnesses. (Doc. no. 4, p. 12.) Petitioner also asserted these claims on direct appeal, and the Georgia Court of Appeals denied them on the merits, applying the two-pronged test in Strickland and determining that Petitioner failed to show either deficient performance or prejudice. See Overstreet, 696 S.E.2d at 119-20. In its analysis of these claims on direct appeal, the Georgia Court of Appeals relied on the record of the hearing on Petitioner's motion for a new trial, where trial counsel testified. See id. As explained below, there is no basis for federal habeas relief in Grounds Fourteen and Fifteen because the state appellate court's factual findings are entitled to deference and it applied Strickland to the facts of Petitioner's case in an objectively reasonable manner.

> *(i)    Failure to Conduct Adequate Pretrial Investigation*

Petitioner contends that he had to contact the state bar twice "to force counsel to come and see him" and "to obtain a copy of the discovery." (Doc. no. 4, p. 12; doc. no. 8, p. 25.) This claim was rejected by the trial court on Petitioner's motion for new trial, and by the state appellate court. Overstreet, 696 S.E.2d at 119. The appellate court concluded that "some evidence supported the trial court's finding that trial counsel spent sufficient time

investigating and preparing the case[.]" Id. The record comfortably supports this finding.

At the hearing on the motion for new trial, Petitioner testified that trial counsel only came to see him in jail "maybe" four times. (Doc. no. 20-11, pp. 37-38.) Petitioner also testified that he wrote the state bar twice because he was not getting responses to letters he was sending to trial counsel and because trial counsel did not give him the State's discovery packet. (Id. at 38-39.) Trial counsel recalled, however, that his pretrial investigation including meeting with Petitioner at least twice before trial, where they had "lengthy conversations," and that his investigator also met with Petitioner twice before trial. (Id. at 55, 58.) With respect to Petitioner's claim in his letter to the bar that trial counsel had not reviewed discovery with him, trial counsel testified that, at the time the letter was sent, he and Petitioner "had actually gone over [the discovery] in great detail." (Id. at 71-72.) The appellate court also correctly noted that "[t]here exists no magic amount of time which counsel must spend in actual conference with his client." Overstreet, 696 S.E.2d at 119 (quoting Kilby v. State, 657 S.E.2d 567, 570 (Ga. Ct. App. 2008)).

Petitioner has failed to present any evidence to suggest the state appellate court made an unreasonable determination of the facts, and he has also failed to show how trial counsel's pretrial performance was deficient or prejudicial under Strickland.[7] 466 U.S. at 688, 694.

---

[7]Petitioner also asserts that trial counsel failed "to make certain objections at trial," (doc. no. 8, p. 23,), but he does not support this conclusory allegation by identifying any specific objections that trial counsel failed to raise, (see id. at 23-27). To the extent Petitioner is referring to the allegation in Ground Nine, that trial counsel was ineffective for failing to object to the State's attack on his character, this entirely separate claim of ineffective assistance of trial counsel was correctly found to be procedurally defaulted by the state habeas court, as discussed supra Part III.A.2.

Accordingly, his contention with respect to trial counsel's purportedly inadequate pretrial investigation does not warrant federal habeas relief.

(ii)     <em>Failure to Present Alibi Defense or Witnesses</em>

Petitioner also alleges that trial counsel was ineffective because Petitioner provided him "with several individuals who could provide an alibi" that trial counsel allegedly failed to contact. (Doc. no. 4, p. 12; doc. no. 8, pp. 23-27.) This claim was rejected by the trial court on Petitioner's motion for new trial, and by the state appellate court. <u>Overstreet</u>, 696 S.E.2d at 119. The appellate court rejected this claim because trial counsel testified that Petitioner had told him prior to trial that "he had no other witnesses." <u>Id.</u> This finding is amply supported by the record.

Indeed, at the hearing on the motion for new trial, trial counsel presented (1) the notes from his investigator's initial meeting with Petitioner on April 21, 2006, where "none" was written on the portion of the form for listing witnesses; and (2) notes from the investigator dated April 28, 2006, where he again asked Petitioner for witnesses and Petitioner said "that he did not have any witnesses." (Doc. no. 20-11, pp. 59-60.) Trial counsel further testified that he saw Petitioner twice in 2007 with his investigator and asked Petitioner if had any witnesses, and he said he did not. (<u>Id.</u> at 61.)

Petitioner testified at the same hearing that he alerted trial counsel to three alibi witnesses – his grandparents, Eddie and Alice Gilmore, and his aunt, Deanna Jones Paschal – but that trial counsel did not contact them. (<u>Id.</u> at 40-41, 43-44, 47.) Petitioner further testified that he had to contact these witnesses himself after the first day of trial to come and testify on the second day of trial. (<u>Id.</u>) A fourth purported alibi witness, Petitioner's cousin

24

Ava Green, testified at the hearing on the motion for a new trial that Petitioner was home with her on the night of one of the robberies, (id. at 51-52), but Petitioner testified that he only gave trial counsel the names of his aunt and grandparents, (id. at 43-44). Petitioner also conceded that these witnesses, including Ms. Green, could have only provided an alibi for the robbery of one Wendy's restaurant on April 11, 2006. (Id. at 44-45.)

Petitioner again reiterates his account of the events, (doc. no. 4, p. 12; doc. no. 8, pp. 23-27), but he has presented nothing to suggest the state appellate court made an unreasonable determination of the facts in light of the evidence presented during the hearing on the motion for new trial, nor has he presented clear and convincing evidence to rebut the presumption of correctness afforded the court's factual findings. Indeed, given the factual determination that Petitioner affirmatively told trial counsel that there were *not* any alibi witnesses, the failure to contact them certainly did not fall "below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Accordingly, Petitioner has presented nothing to suggest that the state appellate court's analysis, in light of its factual determinations, was contrary to Strickland or an objectively unreasonable application thereof, and his contention with respect to trial counsel's purported failure to properly call alibi witnesses does not warrant federal habeas relief.

### 3. The State Court's Decision to Reject the Claims of Ineffective Assistance of Appellate Counsel in Grounds Four and Five Is Entitled to Deference under AEDPA.

In Grounds Four and Five of his federal petition, Petitioner claims that appellate counsel provided ineffective assistance by failing to (1) attack his kidnapping convictions when the evidence was insufficient to support them because the asportation element was not

present and (2) argue for vacatur of the burglary convictions because the burglaries were part and parcel of the armed robberies. (Doc. no. 4, pp. 7, 10.) Applying the <u>Strickland</u> standard, the state habeas court concluded Petitioner had failed to show any of these alleged omissions by appellate counsel constituted deficient performance. (Doc. no. 17-6, pp. 4-6, 8-11.) As explained below, there is no basis for federal habeas relief in Grounds Four and Five because the state habeas court's factual findings are entitled to deference and it applied <u>Strickland</u> to the facts of Petitioner's case in an objectively reasonable manner.

In order to assess Petitioner's claims that his appellate counsel had been ineffective, the state habeas court heard testimony from Petitioner's appellate counsel, Mr. Taylor. In concluding that appellate counsel's performance was not deficient, the state habeas court cited appellate counsel's testimony that he raised every issue on appeal he thought had merit, and he incorporated Petitioner's input about claims he wanted raised into the appeal. (<u>Id.</u> at 9.) The state habeas court further noted that strategy and tactics do not establish ineffective assistance of counsel. (<u>Id.</u> (citing <u>Ray v. State</u>, 560 S.E.2d 54, 55 (Ga. Ct. App. 2002).) Moreover, Petitioner failed to question appellate counsel at his evidentiary hearing about his failure to raise the issues in Grounds Four and Five, and the state habeas court noted that, in the absence of testimony to the contrary, appellate counsel's decisions are presumed to be strategic. (<u>Id.</u> at 9, 11 (citing <u>Crider v. State</u>, 542 S.E.2d 163, 167 (Ga. Ct. App. 2000).)

At the state habeas evidentiary hearing, appellate counsel testified that he reviewed the trial transcript and flagged issues, and then discussed those issues with Petitioner and "asked him if he had any of his own, basically." (Doc. no. 20-1, p. 13.) Appellate counsel testified that he used Petitioner's input in developing his arguments, but that he did not recall

Petitioner making an argument that he had not already considered upon his review of the record. (Id. at 14.) Appellate counsel added that he raised every claim at the time that he thought had merit, and that "[a]ny grounds that [he] left out at that time, [he] believed [he] was leaving out for a purpose," because he, based on "working in the attorney general's office and doing quite a bit of appeal work," was "not a big believer in the, especially in the appellate court, a shotgun approach." (Id. at 17-18.) He summarized that any errors that he did not include at that time he "believed were harmless error or not actual error." (Id. at 18.)

On federal review, Petitioner offers nothing that would suggest the state habeas court was unreasonable in its factual findings that appellate counsel raised every issue on appeal he thought had merit and his decision not to raise the issues trumpeted by Petitioner now was a strategic one. Indeed, Petitioner simply forewent his opportunity to challenge appellate counsel's testimony by not questioning him during that hearing.[8] The record amply supports the state habeas court's findings that appellate counsel made a strategic choice not to raise the issues enumerated in Grounds Four and Five, particularly his testimony that "[a]ny grounds that [he] left out at that time, [he] believed [he] was leaving out for a purpose." (Id.)

Nor has Petitioner presented anything to call into question the state habeas court's conclusion, in light of this factual determination, that Petitioner failed to establish deficient performance by appellate counsel. Moreover, this conclusion is entirely consistent with Supreme Court case law that recognizes the deference to be given to appellate counsel's

_____

[8] While Petitioner testified about his grounds for relief at his state habeas evidentiary hearing, (see doc. no. 20-1, pp. 8-10), he did not call appellate counsel as a witness or conduct any questioning of him, (id. at 10, 21), nor did he present any other evidence when afforded an opportunity to do so, (id. at 22).

strategic decision to avoid weaker arguments on appeal and focus on those most likely to prevail. See Smith v. Murray, 477 U.S. 527, 536 (1986) ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)); see also Smith v. Robbins, 528 U.S. 259, 288 (2000) ("[I]t is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent.").

However, the state habeas court also addressed the merits of the claims appellate counsel did not raise. With specific respect to the kidnapping convictions claim, the state habeas court emphasized that Petitioner "presented no evidence on the record that the asportation element was not proven at trial." (Doc. no. 17-6, p. 9.) While Petitioner faults appellate counsel for not challenging the asportation element of his kidnapping convictions, appellate counsel did make a challenge to the sufficiency of the evidence for all of Petitioner's convictions, which was soundly rejected by the Georgia Court of Appeals. See Overstreet, 696 S.E.2d at 117.

With respect to the claim that appellate counsel should have sought vacatur of the burglary convictions due to their alleged merger with the armed robbery convictions, the state habeas court cited appellate counsel's testimony that he believed the two crimes stand independently, and the court cited Georgia law supporting appellate counsel's conclusion in this regard. (See id. at 10 (citing Boyd v. State, 308 S.E.2d 626, 631 (Ga. Ct. App. 1983) ("It is not error to sentence separately for armed robbery and burglary, as one is not included in the other.").) Appellate counsel testified that he did not consider making the argument "that

28

the burglary conviction should have been merged with armed robbery," because he "believed that those two things stood independently of each other. [He] didn't think that they were lesser included of one or the other. So [he] did not believe and [he] still [doesn't] believe that they merge." (Id. at 20.) Indeed, Petitioner's assertion concerning his burglary convictions was plainly without merit in light of established Georgia law, and appellate counsel's failure to raise the issue certainly did not fall "below an objective standard of reasonableness." Strickland, 466 U.S. at 688; see also Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (noting that appellate counsel "is not ineffective for failure to raise a meritless argument.").

Accordingly, Petitioner has presented nothing to suggest that the state habeas court's conclusion – that appellate counsel's strategic decision not to raise these particular issues did not constitute deficient performance – was contrary to Strickland or an objectively unreasonable application thereof, and his contentions with respect to appellate counsel's failure to challenge his kidnapping and burglary convictions do not warrant habeas relief.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 28th day of August, 2013, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE